**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**UNITED STATES OF AMERICA**

V.                                                              **CRIMINAL NO. 3:03-cr-66WS
                                                                 CIVIL ACTION NO. 3:04-CV-882WS**

**RALPH BURLEIGH**

<u>**ORDER**</u>

Before this court is defendant Ralph Burleigh's motion brought pursuant to Title 28 U.S.C. § 2255,[1] seeking to vacate his sentence on the alleged authority of the United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2431, 159 L.Ed.2d 403 (2004).  On January 22, 2004, Burleigh entered a plea of guilty to two counts of using a communications facility in furtherance of drug trafficking activity in violation of Title 21 U.S.C. § 843(b).[2]  He entered his guilty plea under a negotiated Memorandum of Understanding (MOU), signed by Burleigh and the United States.  This agreement provided that he waived his right to appeal and/or to raise post conviction challenges to his conviction and sentence under Title 28 U.S.C.

---

[1] Title 28 U.S.C. § 2255 provides in pertinent part that, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

[2] Title 21 U.S.C. § 843(b) provides that, "[i]t shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication."

§2255. The United States dismissed thirteen other related counts, recommended a three level downward adjustment for acceptance of responsibility, and recommended a sentence within the lower 25% of the Sentencing Guideline range. The United States also agreed not to prosecute Burleigh under either Title 18 U.S.C. §§ 922(g)[3] or 924(c).[4] This court accepted Burleigh's plea and, on May 24, 2004, sentenced Burleigh to serve 48 months on one count, and 20 months on the second count, for a total of 68 months to serve. The United States also recommended a three level

---

[3]Title 18 U.S.C. § 922(g) provides that, "[i]t shall be unlawful for any person--

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;  (2) who is a fugitive from justice;  (3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));  (4) who has been adjudicated as a mental defective or who has been committed to a mental institution;  (5) who, being an alien– (A) is illegally or unlawfully in the United States; or (B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));  (6) who has been discharged from the Armed Forces under dishonorable conditions;  (7) who, having been a citizen of the United States, has renounced his citizenship;  (8) who is subject to a court order that– (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;  (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or (9) who has been convicted in any court of a misdemeanor crime of domestic violence,  to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

[4]Title 18 U.S.C. § 924(c)(1)(A) provides that, "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime– (i) be sentenced to a term of imprisonment of not less than 5 years;  (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

downward adjustment of Burleigh's base offense level for acceptance of probability. This court then applied a two level upward adjustment because Burleigh possessed a firearm. Burleigh now seeks to contest the two level adjustment.

## BURLEIGH FILES A § 2255 PETITION

Notwithstanding his waiver of the right to pursue habeas corpus relief under Title 28 U.S.C. § 2255, Burleigh filed a petition to vacate his conviction and sentence on October 27, 2004, claiming under the United States Supreme Court decision in *Blakely v. Washington* that this court's two level increase of his offense level under the United States Sentencing Guidelines was not proper. Burleigh also contends that he directed counsel to file an appeal, even though he waived the right to appeal in his Memorandum of Understanding.

A federal prisoner may move to vacate, set aside or correct his sentence under four cognizable grounds: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge under § 2255 may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982).

In the instant case, Burleigh raises no constitutional issues; instead, he seeks only to mount a collateral attack on his conviction and sentence, relief he has waived a right to seek.

## THE MATTER OF WAIVER

In the instant case, Burleigh voluntarily and knowingly waived his right to appeal and his right to seek habeas corpus relief under § 2255. *United States v. Wilkes*, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of his appeal and § 2255 rights). Under oath Burleigh announced to this court that he understood he was waiving his right both to appeal and/or to file any § 2255 motions, thereby admitting all that is required for his waiver to be enforceable. *See Wilkes*, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Burleigh's statements to this court made under oath are entitled to a strong presumption of truthfulness. *Wilkes*, 20 F.3d at 653; *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).

Furthermore, Burleigh's petition does not challenge the validity of his waivers, nor does he challenge his counsel's advice related to the waiver. The only assertion Burleigh makes regarding his attorney is that he directed his attorney to file an appeal, and that his attorney did not do so. Burleigh offers nothing to substantiate this request of his attorney, but the fact remains that Burleigh's right to appeal was waived in his Memorandum of Understanding. If Burleigh is asserting ineffective assistance of counsel by this assertion, then it must fail because Burleigh makes no claim that his

attorney's assistance directly affected the validity of his waivers or his guilty plea. *United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002).

Burleigh's primary contention is that this court must revisit his sentence because of the United States Supreme Court's decision in *Blakely*. Neither *Blakely*, nor the Supreme Court's subsequent decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), however, may be applied to vacate or modify Burleigh's sentence at this time since Burleigh waived of his appeal rights, and his conviction and sentence were final at the time *Booker* was decided. *See United States v. McKinney*, 406 F.3d 744, 746-47 (5th Cir. 2005) (enforcing post-*Booker*, a waiver of appeal rights that was signed prior to the issuance of *Booker*).

Therefore, finding no assertion by Burleigh such as a claim that his attorney was ineffective for allegedly giving erroneous advice regarding his likely sentence, which, in turn, might have induced him to enter a guilty plea, or any other assertion which falls outside the scope of Burleigh's waivers, this court finds that Burleigh knowingly and voluntarily waived his right to appeal and his right to pursue this petition.

### **BOOKER/BLAKELY PRINCIPLE IS NOT APPLIED RETROACTIVELY**

In the *Blakely* decision issued on June 24, 2004, one month after this court's Judgment in the instant case, the United States Supreme Court held that the sentencing procedures of the State of Washington violated the Sixth Amendment because the defendant received an enhanced sentence based on factual findings made by a judge, and not by a jury. Thus, because the Supreme Court addressed

only the State of Washington's sentencing scheme, the *Blakely* decision did not apply to the United States Sentencing Guidelines.

On January 12, 2005, the United States Supreme Court issued its Opinion in the case of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), holding that the *Blakely* principle was to be applied to the federal sentencing guidelines, making them advisory rather mandatory. The *Booker* Court further held that "we must apply today's holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on direct review." *Booker*, 125 S.Ct. at 769. The *Booker* decision did not direct that the *Blakely* principle was to be applied retroactively to cases which were already final at the time *Booker* was handed down. When *Booker* was decided, the instant case already was final and was not on direct review because Burleigh had waived his right to appeal.

While the *Booker* decision may have been silent on the issue of its retroactive application, the United States Supreme Court may have already revealed its view of this matter on June 24, 2004, in the case of *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004).[5] There, the Supreme Court noted that when a Supreme Court decision results in a new rule, that rule applies to all criminal cases still pending on direct review; *id.; Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The Supreme Court observed that a new substantive rule applies to convictions and sentences that are already final only in

---

[5]The *Schriro* Court clarified that its decision in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), that a jury, not a judge, must make the findings necessary to qualify a person for punishment by death, was a watershed procedural rule which did not apply retroactively to a death penalty case that already was final when *Ring* was decided.

limited circumstances, such as where the new rule narrows the scope of a criminal statute by limiting its terms, or from constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish. *Schriro*, 124 S.Ct. at 2522. "Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Id.*, at 2522-23. In contrast, said the *Schriro* Court, new procedural rules generally do not apply retroactively because "[t]hey do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id*. The class of procedural rules which are applied retroactively is extremely narrow. *Id.*, at 2523.

  Faced directly with the question of *Booker*'s retroactive application, several Circuit Courts have held that defendants whose convictions had become final when *Booker* was decided were foreclosed from seeking initial collateral relief based on *Booker*. *See McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) (concluding that *Booker* states a new non-watershed procedural rule and does not apply retroactively to criminal cases final before its release); *Humphress v. United States*, 398 F.3d 855, 863 (6th Cir. 2005) (same); *United States v. Price*, 400 F.3d 844 (10th Cir. 2005); *Varela v. United States*, 400 F.3d 864 (11th Cir. 2005) (same); *Guzman v. United States*, 404 F.3d 139 (2d Cir. 2005) (same); *Lloyd v. United States*, 407 F.3d 608 (3d Cir. 2005) (same); *Never Misses a Shot v. United States*, 413 F.3d

781 (8th Cir. 2005) (same); *United States v. Cruz*, 423 F.3d 1119 (9th Cir. 2005) (same); and *United States v. Morris*, 429 F.3d 65, 2005 WL 2950732 (4th Cir.2005) (same).

On April 28, 2005, the United States Court of Appeals for the Fifth Circuit concluded that *Booker* is not to be applied retroactively in cases already on collateral review. *See In Re Elwood,* 408 F.3d 211, 213 (5th Cir. 2005), citing *Schriro v. Summerlin*, *McReynolds* and *Varela,* announcing that it would join other circuits holding that *Booker* does not apply retroactively; *see also United States v. Gentry*, 432 F.3d 600 (5th Cir. 2005) (same).

Therefore, inasmuch as the instant case already had become final at the time that the rule in *Booker* was announced, that rule is not retroactively applicable to Burleigh's conviction and sentence, and cannot provide a basis for collateral relief under § 2255, even if Burleigh had not waived the right to mount a collateral attack on his conviction and sentence.

## **CERTIFICATE OF APPEALABILITY**

An appeal from a final order in a habeas corpus proceeding cannot be taken "unless a circuit justice or judge issues a certificate of appealability." Title 28 U.S.C. § 2253(c)(1)(A). Although Burleigh has not yet filed a notice of appeal, this court nonetheless may address whether he would be entitled to the certificate. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a

denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious."). A COA "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Title 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1040, 154 L.Ed.2d 931 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The court concludes that reasonable jurists could not debate this denial of Burleigh's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327. Similarly, as to the claims that this court has addressed on procedural grounds, the Court finds that Burleigh cannot establish at least one of the *Slack* criteria. Specifically, jurists of reason would not find debatable this court's ruling that Burleigh's waivers bar his *Booker/Blakely* claim, and that, in any event, *Booker* is not applied

retroactively to cases that were final when *Booker* was decided. Accordingly, Burleigh is not entitled to a Certificate of Appealability as to his claims.

**SO ORDERED**, this the 30th day of June, 2006.

**s/ HENRY T. WINGATE
CHIEF UNITED STATES DISTRICT JUDGE**

CRIMINAL NO. 3:03-cr-66WS
CIVIL ACTION NO. 3:04-CV-882WS
Habeas Corpus under § 2255 & COA denied